UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X

                                                  :
CAROL TRACHTENBERG,                               :
                                                  :                    12 Civ. 7964 (PAE)
                                    Plaintiff,    :
                                                  :                    OPINION & ORDER
                        -v-                       :
                                                  :
THE DEPARTMENT OF EDUCATION OF THE CITY           :
OF NEW YORK, THE CITY SCHOOL DISTRICT OF          :
THE CITY OF NEW YORK,                             :
                                                  :
                                    Defendants.   :

---------------------------------------------------------------------X

PAUL A. ENGELMAYER, District Judge:

        Plaintiff Carol Trachtenberg brings this action against the Department of Education of the

City of New York and the City School District of the City of New York (the "BOE"),[1] claiming

that BOE employees subjected her to disparate treatment and a hostile work environment on

account of her age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621

*et seq.* ("ADEA").  The BOE moves to dismiss the Complaint pursuant to Federal Rule of Civil

Procedure 12(b)(6).  That motion is granted in part and denied in part.

---

[1] The BOE represents that the proper name of Trachtenberg's former employer is the Board of
Education of the City School District of the City of New York.  BOE Br. 1 n.1.  Trachtenberg
does not dispute this characterization.  The Court therefore refers to the BOE as the defendant
herein.

I.      **Background**

      **A.  Factual Background**[2]

Trachtenberg  is 65 years old.  Am. Compl. ¶ 2.  Before her retirement in 2011, she had

been employed by the BOE as a teacher—specifically, a speech therapist—for 29 years.  *Id.* ¶¶

10, 23, 24.  She had obtained tenure.  *Id.* ¶ 12.  According to Trachtenberg, she had always

performed her job in a satisfactory manner and, before the 2009–10 school year, had never

received an unsatisfactory performance evaluation.  *Id.* ¶¶ 10, 14.

      During the 2009–10 and 2010–11 school years, Trachtenberg alleges, she was "subjected

to a continuing, deliberate, and intentional pattern of age discrimination."  *Id.* ¶ 13.  The alleged

discrimination took several forms.  Trachtenberg received unsatisfactory year-end performance

reviews for both 2009–10 and 2010–11.  *Id.* ¶ 14.  These negative reviews, Trachtenberg alleges,

were the product of "biased informal and formal observations" and coincided with "an avalanche

of biased letters from the Principal."  *Id.* ¶¶ 15–18.  Trachtenberg claims that these negative

reviews typically resulted in collateral consequences, such as teacher removal proceedings and

ineligibility for certain types of work.  *Id.* ¶¶ 14, 28.

---

[2] The Court's account of the underlying facts is drawn from the Amended Complaint (Dkt. 9),
and the exhibits attached to the Declaration of Laura Rowntree in Support of Defendants' Motion
to Dismiss ("Rowntree Decl.") (Dkt. 13).  These exhibits include:  (1) a copy of the charges filed
by Trachtenberg with the EEOC, *id.* Ex. A; (2) a copy of the notice of Trachtenberg's right to
sue issued by the EEOC, *id.* Ex B.; (3) complete copies of some, though not all, of the letters and
observation reports referenced by Trachtenberg in the Amended Complaint, *id.* Exs. C–H.  The
Court may consider these documents on this motion.  *See Holowecki v. Fed. Express Corp.*, 440
F.3d 558, 565–66 (2d Cir. 2006) (proper to consider plaintiff's filings with EEOC on motion to
dismiss); *DiFolco v. MSNBC Cable, LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (proper to consider
documents incorporated by reference in the complaint, and documents upon which the complaint
"relies heavily" and as to which there is no dispute regarding their authenticity).  Trachtenberg
does not dispute the propriety of considering these documents on this motion.

Trachtenberg also alleges that the school's principal, Katy Rosen, mistreated her. She alleges that the school had a problem with chemicals, such that staff members had been advised to keep their windows open to increase ventilation. *Id.* ¶ 19. Trachtenberg alleges that, in an effort to harass her and force her to retire, Rosen "deliberately changed [Trachtenberg's] classroom and placed her in a room that had no windows and subject[ed] her to the PCB problem." *Id.*[3] Rosen also, allegedly, "would frequently stand in the area and stare at [Trachtenberg] in an effort to intimidate [her] and watched over [her] without any feedback whatsoever." *Id.* One colleague allegedly told Trachtenberg that Rosen was "out to get [her]." *Id.* ¶ 25.

Trachtenberg further alleges she "has been bullied and intimidated and her reputation damaged by scurrilous charges such as repeatedly falling asleep, . . . lacking social skills, . . . being angry and hostile . . . not doing work . . . not servicing children, . . . [and] having time management problems." *Id.* ¶ 20. Additionally, someone "forc[ed] teachers to write statement[s] against [Trachtenberg], and humiliate[d] [her] by publicly scolding her in front of her students and coworkers." *Id.* Although the Amended Complaint does not specify *who* did these things, the Court infers that it thereby refers to Rosen and other administrators.[4]

---

[3] After Trachtenberg complained of the poor ventilation in her workplace, Rosen sent her a letter notifying her that she had been reassigned to a different workplace. Rowntree Decl. Ex. C.

[4] *See* Rowntree Decl. Ex. C (letter from Rosen to Trachtenberg, referring to her repeatedly "fall[ing] asleep at meeting with colleagues and parents"); *id.* Ex. E (letter from Rosen to Trachtenberg, stating that Trachtenberg "used poor professional judgment, putting a severely impaired child at risk of danger"); *id.* Ex. F (letter from Assistant Principal Louise Xerri to Trachtenberg, finding her conduct to be "extremely unprofessional and a disservice to your student"); *id.* Ex. G (observation report from Rosen, finding Trachtenberg's tone with students to be "scolding and punitive"); *id.* Ex. F (observation report from Rosen, finding Trachtenberg's "poor planning" to be a "great disservice to our special needs students").

These allegations, Trachtenberg claims, reflected "a pattern and practice of selecting and targeting the oldest teachers for discipline and negative observations in an attempt to force them to retire." *Id.* ¶ 21.  Trachtenberg alleges that at least five other teachers were targeted because of their advanced age, whereas at least four younger teachers did not "face the same scrutiny." *Id.* ¶¶ 21, 23.  On one occasion, Trachtenberg was compared unfavorably to a younger speech teacher, *id.* ¶ 18; Trachtenberg also allegedly did not receive the same professional training opportunities as younger teachers, *id.* ¶ 26.

As a result of the actions outlined above, Trachtenberg alleges, she was "compelled to retire (constructively terminated)." *Id.* ¶ 22.[5]  Had she not retired, Trachtenberg alleges, "teacher removal proceeding [sic] would have commenced." *Id.*

### B.  Procedural History

On December 13, 2011, the U.S. Equal Employment Opportunity Commission ("EEOC") received a charge of discrimination from Trachtenberg, dated December 9, 2011.  Rowntree Decl. Ex. A.  On July 20, 2012, the EEOC issued a notice of Trachtenberg's right to sue.  *Id.* Ex. B.

On October 17, 2012, Trachtenberg filed this lawsuit in the Supreme Court of the State of New York, County of New York.  Dkt. 1, Ex. A.  On October 25, 2012, the BOE removed the action to this Court.  Dkt. 1.  On December 21, 2012, the BOE moved to dismiss the Complaint. Dkt. 4.

On January 24, 2013, Trachtenberg filed an Amended Complaint.  Dkt. 9.  On February 14, 2013, the BOE moved to dismiss the Amended Complaint.  Dkt. 12 ("BOE Br.").  On March

---

[5] Trachtenberg never specifies *when* she retired.  However, the Amended Complaint references an observation report conducted on April 7, 2011, *see* Rowntree Decl. Ex. G, and a "biased letter" received on May 2, 2011, *see* Am. Compl. ¶ 15.

4

13, 2013, Trachtenberg opposed that motion.  Dkt. 16 ("Pl. Br.").  On March 21, 2013, the BOE

replied.  Dkt. 17 ("BOE Reply Br.").

## II.    Applicable Legal Standard

In resolving a motion to dismiss, the Court must "construe the Complaint liberally,

accepting all factual allegations in the Complaint as true, and drawing all reasonable inferences

in plaintiff['s] favor."  *Galiano v. Fid. Nat'l Title Ins. Co.*, 684 F.3d 309, 311 (2d Cir. 2012).

Nevertheless, the "[f]actual allegations must be enough to raise a right of relief above the

speculative level," and the complaint must plead "enough fact[s] to raise a reasonable

expectation that discovery will reveal evidence of [plaintiff's claim]."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 556 (2007).  Put differently, "[t]o survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S.

at 570).

Before *Twombly* and *Iqbal*, the Supreme Court had held that "under a notice pleading

system, it is not appropriate to require a plaintiff to plead facts establishing a prima facie case" of

employment discrimination under the framework set forth in *McDonnell Douglas Corp. v.

Green*, 411 U.S. 792 (1973), because "the ordinary rules for assessing the sufficiency of a

complaint apply."  *Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 508, 511 (2002); *see also id.* at

506 ("Moreover, the *McDonnell Douglas* framework does not apply where, for example, a

plaintiff is able to produce direct evidence of discrimination. . . . It seems incongruous to require

a plaintiff, in order to survive a motion to dismiss, to plead more facts than he may ultimately

need to prove to succeed on the merits if direct evidence of discrimination is discovered [during

discovery]." (citations omitted)).

5

At the time *Swierkiewicz* was decided, however, the "ordinary rules" were different:  The adequacy of pleadings was governed by the no-set-of-facts test articulated in *Conley v. Gibson*, 355 U.S. 41 (1957).  *See Swierkiewicz*, 534 U.S. at 512, 514 (citing *Conley*).  But *Twombly* and *Iqbal* have since "retired" the *Conley* formulation.  *See Iqbal*, 556 U.S. at 670.  Notwithstanding that doctrinal shift, the Supreme Court, in *Twombly*, reaffirmed its statement from *Swierkiewicz* that an employment discrimination plaintiff need not establish a *prima facie* case at the pleading stage.  *Twombly*, 550 U.S. at 570.  As the Supreme Court held in *Swierkiewicz*, it had been error for the Second Circuit to require the plaintiff to allege facts required to make out a *prima facie* case at the pleading stage in the absence of direct evidence of discrimination, when direct evidence might be found during discovery.  *Swierkiewicz*, 534 U.S. at 506.

In light of these developments, the Second Circuit has recently stated that "[t]he pleading standard for employment discrimination complaints is somewhat of an open question in our circuit."  *Hedges v. Town of Madison*, 456 F. App'x 22, 23 (2d Cir. 2012) (summary order); *see also Jackson v. Cnty. of Rockland*, 450 F. App'x. 15, 19 (2d Cir. 2011) (summary order); *Schwab v. Smalls*, 435 F. App'x 37, 39–40 (2d Cir. 2011) (summary order).  Although it has declined to resolve the apparent tension between these precedents, the Second Circuit has suggested that "at a minimum, employment discrimination claims must meet the standard of pleading set forth in *Twombly* and *Iqbal*, even if pleading a prima facie case is not required."  *Hedges*, 456 F. App'x at 23.

Accordingly, although the elements of a *prima facie* case under *McDonnell Douglas* need not be established at the pleading stage, these elements nevertheless "provide an outline of what is necessary to render a plaintiff's employment discrimination claims for relief plausible." *Kassman v. KPMG LLP*, No. 11 Civ 3743 (JMF), 2013 WL 452913, at *4 (S.D.N.Y. Feb. 7,

2013) (quoting *Sommersett v. City of N.Y.*, No. 09 Civ. 5916 (LTS)(KNF), 2011 WL 2565301, at

*5 (S.D.N.Y. June 28, 2011) (alterations omitted)).  Courts therefore consider the *McDonnell*

*Douglas* elements "in determining whether there is sufficient factual matter in the complaint

which, if true, gives Defendant a fair notice of Plaintiff's claim and the grounds on which it

rests."  *Id.* (citation omitted).  That is, "[i]n the absence of a facially plausible discrimination

claim that gives fair notice to a defendant of the acts that form the basis of the claim, dismissal at

the pleading stage is warranted."  *Williams v. Addie Mae Collins Cmty. Serv.*, No. 11 Civ. 2256

(LAP), 2012 WL 4471544, at *3 (S.D.N.Y. Sept. 27, 2012) (citing *Patane v. Clark*, 508 F.3d

106, 111–13 (2d Cir. 2007)).

### III.   Discussion

Trachtenberg claims that her rights under the ADEA were violated when she was

subjected to (1) disparate treatment, and (2) a hostile work environment, on account of her age.

The Court addresses each claim in turn.

#### A.  Disparate Treatment

As relevant here, the ADEA makes it unlawful for an employer "to discharge any

individual or otherwise discriminate against any individual with respect to his compensation,

terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C.

§ 623(a)(1).  To establish a prima facie case of age discrimination under the ADEA,

Trachtenberg must demonstrate that: (1) she was within the protected group of employees (those

over age 40); (2) she was qualified for the position in question; (3) she experienced an adverse

employment action; and (4) that action occurred under circumstances giving rise to an inference

of discrimination.  *Bucalo v. Shelter Island Union Free Sch. Dist.*, 691 F.3d 119, 129 (2d Cir.

2012) (citing *Gorzynski v. JetBlue Airways, Corp.*, 596 F.3d 93, 107 (2d Cir. 2010)); *Leibovitz v. Cornell Univ.*, 584 F.3d 487, 498 (2d Cir. 2009).

For purposes of this motion, the BOE does not dispute that Trachtenberg has sufficiently alleged the first two elements.  Instead, the BOE argues that Trachtenberg has not plausibly alleged (1) an adverse employment action or (2) facts that could plausibly give rise to an inference of discrimination based on her age.  *See* BOE Br. 7–16.

### 1.  Adverse Employment Action

"A plaintiff sustains an adverse employment action if she endures a 'materially adverse change' in the terms and conditions of employment."  *Malcolm v. Honeoye Falls Lima Cent. Sch. Dist.*, 483 F. App'x 660, 662 (2d Cir. 2012) (summary order) (quoting *Galabya v. N.Y.C. Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000)).  "To be 'materially adverse[,] a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities.'"  *Das v. Consol. Sch. Dist. of New Britain*, 369 F. App'x 186, 189 (2d Cir. 2010) (summary order) (quoting *Galabya*, 202 F.3d at 640).  "A materially adverse change might be indicated by a termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation."  *Galabya*, 202 F.3d at 640 (citation omitted).

Trachtenberg's pleadings set forth a number of different types of conduct that she alleges were adverse employment actions:  (1) she was subjected to "microscopic scrutiny," bullying, and intimidation, Am. Compl. ¶¶ 14, 20; (2) her office was moved to a poorly ventilated room, *id.* ¶ 19; (3) she was denied professional training, *id.* ¶ 26; (4) she was constructively discharged, *id.* ¶ 22; and (5) she received two negative performance evaluations and an "avalanche [of]

biased letters" containing "scurrilous charges," *id.* ¶¶ 14–17, 20, 28.  For the following reasons, only those allegations regarding her negative performance evaluations plausibly describe an adverse employment action.

First, "excessive scrutiny do[es] not constitute adverse employment action in the absence of other negative results, such as a decrease in pay or being placed on probation."  *Honey v. Cnty. of Rockland*, 200 F. Supp. 2d 311, 320 (S.D.N.Y. 2002); *see Stoddard v. Eastman Kodak Co.*, 309 F. App'x 475, 479 (2d Cir. 2009) (summary order) ("excessively harsh criticism by [] boss" not adverse employment action); *Lucenti v. Potter*, 432 F. Supp. 2d 347, 364 (S.D.N.Y. 2006) (collecting cases); *Morrison v. Potter*, 363 F. Supp. 2d 586, 591 (S.D.N.Y. 2005) ("Although . . . close monitoring may cause an employee embarrassment or anxiety, such intangible consequences are not materially adverse alterations of employment conditions." (citation omitted)).  Nor does Rosen's alleged habit of "stand[ing] in the area and star[ing] at [Trachtenberg] in an effort to intimidate [her]" constitute an adverse employment action.  *See Hill v. Rayboy-Brauestein*, 467 F. Supp. 2d 336, 355 (S.D.N.Y. 2006) (plaintiff's allegation that her supervisors "'singled her out' and 'stood over' her while she performed her work" does not constitute adverse employment action).  Trachtenberg does not allege that any negative consequences flowed from the "microscopic scrutiny" of her or from Rosen's alleged efforts at intimidation (save to the extent they contributed to her constructive discharge claim and her negative performance evaluations, discussed *infra*).  Therefore, the alleged conduct does not rise to the level of an adverse employment action.

Second, the relocation of Trachtenberg's office to a windowless, poorly ventilated room does not constitute an adverse employment action.  *See Crawford-Bey v. N.Y. & Presbyterian Hosp.*, No. 08 Civ. 5454 (RJS), 2011 WL 4530193, at *5–6 (S.D.N.Y. Sept. 30, 2011) (no

adverse employment action where plaintiff was assigned to "a small, windowless office" "without [access] to proper ventilation, lighting and with a very offensive smelling bathroom"); *see also Stoddard*, 309 F. App'x at 479 ("inadequate office supplies and space[] do not constitute adverse employment actions"); *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462, 466 (2d Cir. 1997) (the loss of an office and a telephone "has never been held adverse action," absent some commensurate loss of status or diminution of authority).

Third, the denial of professional training opportunities may constitute an adverse employment action, but only where an employee can show "material harm" from the denial, "such as a failure to promote or a loss of career advancement opportunities." *Hill*, 467 F. Supp. 2d at 352; *see Novak v. Waterfront Com'n of N.Y. Harbor*, No. 10 Civ. 9694 (RA), 2013 WL 83118, at *6 (S.D.N.Y. Mar. 1, 2013). Trachtenberg has not alleged any negative consequences resulting from the alleged denial of professional training, and therefore any such denial does not rise to the level of an adverse employment action. *See Sekyere v. City of N.Y.*, No. 05 Civ. 7192 (BSJ)(DCF), 2009 WL 773311, at *4 (S.D.N.Y. Mar. 18, 2009) ("Plaintiff does not contend that her position was altered in any way by not receiving some specific training, nor does she contend that she was disciplined, demoted, transferred, or terminated for lack of some fundamental knowledge that should have been provided for her through training. Accordingly, any failure by Defendants to provide Plaintiff with training does not rise to the level of an adverse employment action."); *Watson v. Paulson*, 578 F. Supp. 2d 554, 564 (S.D.N.Y. 2008).

Fourth, although a "constructive discharge" from employment does constitute an adverse employment action, *see Fitzgerald v. Henderson*, 251 F.3d 345, 357 (2d Cir. 2001), Trachtenberg has not alleged facts sufficient to state a plausible claim of constructive discharge. A constructive discharge occurs "when the employer . . . deliberately makes an employee's

working conditions so intolerable that the employee is forced into an involuntary resignation."

*Morris v. Schroder Capital Mgmt. Int'l*, 481 F.3d 86, 88 (2d Cir. 2007) (citation omitted); *see*

*Pa. State Police v. Suders*, 542 U.S. 129, 139, 147 (2004).  The Supreme Court has described a

hostile-environment constructive discharge claim as "graver . . . than its lesser included

component, hostile work environment."  *Suders*, 542 U.S. at 149 (emphasis omitted).  For the

reasons discussed in Part III(B), *infra*, Trachtenberg has failed to allege facts sufficient to state a

plausible claim of a hostile work environment.  Accordingly, it follows that she has not stated a

claim of constructive discharge, either.  *See Chennette v. Kenneth Cole Prods., Inc.*, 345 F.

App'x 615, 620 (2d Cir. 2009) (summary order) (having failed on hostile work environment

claim, plaintiff cannot succeed on constructive discharge claim, "which requires evidence of

even more severe conditions").

> Trachtenberg's final set of allegations—consisting of the two negative performance

reviews, the avalanche of biased letters containing scurrilous charges, and, significantly, the

adverse consequences flowing therefrom, *see* Am. Compl. ¶¶ 14–17, 20, 28—together do rise to

the level of an adverse employment action.  "Reprimands or negative evaluation letters may, in

some circumstances, constitute adverse employment action."  *Lawrence v. Mehlman*, 389 F.

App'x 54, 56 (2d Cir. 2010) (summary order) (collecting cases).  To qualify as an adverse

employment action, a negative performance evaluation "must trigger negative consequences to

the conditions of employment."  *Taylor v. N.Y.C. Dep't of Educ.*, No. 11 Civ. 3582, 2012 WL

5989874, at *7 (E.D.N.Y. Nov. 30, 2012) (citing *Siddiqi v. N.Y.C. Health & Hosps. Corp.*, 572

F. Supp. 2d 353, 367 (S.D.N.Y. 2008)).  Thus, in the absence of negative consequences attaching

to the alleged negative performance evaluations or other reprimands, courts in this district have

repeatedly found no adverse employment action.  *See, e.g.*, *Frankel v. City of N.Y.*, No. 06 Civ.

11

5450 (LTS)(DFE), 2009 WL 465645, at *3 & n.1 (S.D.N.Y. Feb. 25, 2009) (negative

performance evaluations); *Siddiqi*, 572 F. Supp. 2d at 367–68 (same); *Honey*, 200 F. Supp. 2d at

320 (reprimand letters placed in plaintiff's file); *Valentine v. Standard & Poor's*, 50 F. Supp. 2d

262, 283–84 (S.D.N.Y. 1999) (Sotomayor, J.) (poor performance reviews).  However, where

negative performance reviews *do* trigger some adverse consequences to plaintiff's employment,

courts in this district have left it to the trier of fact to determine whether those consequences rise

to the level of adverse employment action.  *See, e.g.*, *Dressler v. N.Y.C. Dep't of Educ.*, No. 10

Civ. 3769 (JPO), 2012 WL 1038600, at *6–7 (S.D.N.Y. Mar. 29, 2012) (evidence that teacher's

unsatisfactory end-of-year rating "precluded him from the opportunity of participating in the Per

Session Home Instruction Employment Program is sufficient to establish a basis on which a

reasonable trier of fact could find a material adverse change"); *Shapiro v. N.Y.C. Dep't of Educ.*,

561 F. Supp. 2d 413, 423 (S.D.N.Y. 2008) (triable issue of fact existed as to whether adverse

employment action occurred where teachers who received unsatisfactory end-of-year ratings

adduced evidence that consequences of such ratings include, *inter alia*: removal from per session

paid position; inability to transfer within the school district; inability to work in summer school;

and damaged professional reputation).

      Here, Trachtenberg alleges that she received negative year-end performance evaluations

for 2009–10 and 2010–11, as well as several reprimand letters placed in her file.[6]  As noted,

---

[6] Any acts that occurred more than 300 days before Trachtenberg filed her discrimination
charges with the EEOC are time-barred. *See Hodge v. N.Y. Coll. of Podiatric Med.*, 157 F.3d
164, 166 (2d Cir. 1998) (before bringing an ADEA suit, plaintiff in New York "must file an
EEOC charge within the earlier of 300 days after the alleged unlawful practice or, if a complaint
was filed with the state agency, 30 days after receiving notice of termination of proceedings
under the state law" (citing 29 U.S.C. § 629(d)(2)).  Because it is not clear whether Trachtenberg
filed her EEOC charge by mail or in person, *see* Rowntree Decl. Ex. A, it is not clear whether
her charge would be deemed filed on December 9, 2011, or December 13, 2011, *see* 29 C.F.R.

these allegations only state adverse employment action if some material adverse consequence attached to them.  Trachtenberg alleges that two negative year-end evaluations "typically trigger a teacher removal proceeding," and that if she had not retired, a teacher removal proceeding "would have been commenced."  Am. Compl. ¶¶ 14, 22.  But this alleged consequence is necessarily speculative, because Trachtenberg retired before any proceedings did in fact commence.  If Trachtenberg had not retired, and proceedings had *not* commenced, then there would be no adverse consequence on which to base her claim; she cannot manufacture an adverse employment action by retiring and claiming that removal proceedings were a *fait accompli*.  *Cf. Finley v. Giacobbe*, 79 F.3d 1285, 1296 (2d Cir. 1996) ("[W]here the alleged illegality is the employer's failure to afford the employee legally required procedural protections, and the employee voluntarily resigns before being discharged, the resignation effectively deprives the employer of the opportunity to comply with the procedural obligations and forecloses the employee from seeking the protections of her previous rights as an employee.").

However, Trachtenberg also alleges that the negative performance evaluations wrought other adverse consequences, such as making her ineligible for "per session" work and ineligible to transfer to another school.  Courts in this district have found these same consequences sufficient to establish a basis on which a reasonable trier of fact could find a material adverse

---

§1626.7(b)(1) (charges filed by mail deemed filed on date of postmark) & (2) (charges filed in person deemed filed on date of receipt), and therefore whether the cut-off date for an adverse action would be February 12, 2011 or February 16, 2011.  Fortunately, it makes little difference here, because no adverse actions are alleged to have occurred within that four-day span.  The Court therefore assumes, for purposes of this motion, that February 12, 2011 is the relevant date.  On summary judgment, the parties should clarify this detail.

Although Trachtenberg does not specify *when* she received her 2009–10 year end evaluation, it almost certainly is time-barred, along with any reprimand letters received before February 12, 2011.  Reprimand letters received after that date, and Trachtenberg's 2010–11 year-end evaluation, however, may be considered.

change.  *See Dressler*, 2012 WL 1038600, at *7 (teacher ineligible for "per session" work); *Shapiro*, 561 F. Supp. 2d at 423 (teacher barred from per session positions; ineligible to transfer within school district).

The BOE protests that Trachtenberg cannot show that she actually suffered these alleged harms.  But, on this motion, the Court must accept as true the allegation that Trachtenberg was deprived of these opportunities.  It may well be that Trachtenberg's allegations are unfounded, and that she was never denied per session work, the ability to transfer, or any other opportunities based on her performance evaluations.  The BOE will have an opportunity to test those factual claims in discovery and to renew those arguments at summary judgment, or at trial.

Accordingly, Trachtenberg has sufficiently alleged adverse employment action based on her 2010–11 negative performance evaluation and those disciplinary letters dated after February 12, 2011.

### 2.    Inference of Discrimination

Having stated an adverse employment action, Trachtenberg must also allege facts sufficient to give rise to a plausible inference that "age was the 'but-for' cause of the challenged adverse employment action."  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009); *see Gorzynski v. JetBlue Airways, Inc.*, 596 F.3d 93, 105–06 (2d Cir. 2010).  "It is well-settled that an inference of discriminatory intent may be derived from a variety of circumstances, including . . . the more favorable treatment of employees not in the protected group."  *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009) (quoting *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 37 (2d Cir. 1994)); *see Mandell v. Cnty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) ("A showing of disparate treatment . . . is a recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case.").  "An employee is similarly

situated to co-employees if they were (1) 'subject to the same performance evaluation and discipline standards' and (2) 'engaged in comparable conduct.'" *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493–94 (2d Cir. 2010) (quoting *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000)).  "[T]he standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases, rather than a showing that both cases are identical.  In other words, the comparator must be similarly situated to the plaintiff in all material respects." *Id.* at 40 (citations omitted).

Here, Trachtenberg has alleged that (1) in a letter, she was compared unfavorably to a younger speech teacher, Lisa Elion,[7] Am. Compl. ¶ 18; (2) five specific teachers in their 50's and 60's were targeted for discipline and negative evaluations, *id.* ¶ 21; (3) four specific teachers in their 20's and 30's did not face the same degree of scrutiny as their older colleagues, *id.* ¶ 23; and (4) Trachtenberg was denied training opportunities afforded to younger teachers, *id.* ¶ 26. The BOE argues that these allegations are insufficient because Trachtenberg "does not allege who of her colleagues under 40 were speech teachers."  BOE Br. 14–15.  But that is not the case—Trachtenberg has identified at least one speech teacher under 40 who was allegedly treated differently: Lisa Elion.  Am. Compl. ¶ 18.  Additionally, Trachtenberg has identified other teachers under 40 who were allegedly treated differently, *id.* ¶ 23, and five teachers over 40 who were allegedly subjected to the same or similar mistreatment as Trachtenberg, *id.* ¶ 21.

To be sure, Trachtenberg's allegations are thin on specifics—both as to how each comparator is similarly situated to Trachtenberg and what disparate treatment he or she was subjected to.  However, the Court finds that Trachtenberg has, barely, pled sufficient facts to

---

[7] The Amended Complaint later refers to a teacher named Lisa Elliot.  *See* Am. Compl. ¶ 23.  It is not clear whether this refers to the same person.

give rise to a plausible inference of discrimination based on disparate treatment.  *See Boykin v. KeyCorp*, 521 F.3d 202, 215 (2d Cir. 2008) (pleadings made on information and belief sufficient to satisfy *Twombly* pleading standard, particularly where "the names and records, if any, of persons who were not members of the protected class[] and were more favorably treated . . . is information particularly within [defendant's] knowledge and control").  Once again, the BOE may well be correct that the comparators identified by Trachtenberg were either not similarly situated in all material respects, or did not suffer discriminatory treatment, but that is an issue that cannot be resolved on the pleadings.  *See Mandell*, 316 F.3d at 379 ("Ordinarily, the question whether two employees are similarly situated is a question of fact for the jury.").

The BOE also argues that Trachtenberg's negative performance reviews were "a product of her own behavior," not of "age-related bias."  BOE Br. 15–16.  In support of this argument, the BOE points to several letters from Rosen to Trachtenberg reflecting various instances of misconduct by Trachtenberg.  *See* Rowntree Decl. Exs. D–H.  These letters suggest that the BOE may well have had a legitimate, non-discriminatory reason for disciplining Trachtenberg.  The Court is mindful, however, that these letters only represent a sampling of the alleged "avalanche" of biased letters, and do not include the 2010–11 year-end performance review.  Once the full complement of relevant letters and evaluations are produced in discovery, they may well tell a different story.  In any event, whether the BOE had a legitimate, non-discriminatory reason for its actions is an issue for summary judgment or trial.  *See Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000) (finding that district court "invaded the province of the factfinder by accepting the [defendant's] explanations for [the adverse employment action]").

Accordingly, the BOE's motion to dismiss is denied as to Trachtenberg's claims based on the disciplinary letters she received after February 12, 2011 and the negative 2010–11 year-end

performance review.  The BOE's motion to dismiss is granted, however, as to all of Trachtenberg's other alleged adverse employment actions.

### B.  Hostile Work Environment

Under the ADEA, a hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment."  *Kassner v. 2nd Ave Deli., Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (citation omitted).  In the context of Title VII, where the same standard applies, *see Terry v. Ashcroft*, 336 F.3d 128, 148 (2d Cir. 2003), the Second Circuit has described the elements of a hostile work environment as follows:

> To state a claim for a hostile work environment . . . , a plaintiff must plead facts that would tend to show that the complained of conduct: (1) "is objectively severe or pervasive—that is, . . . creates an environment that a reasonable person would find hostile or abusive"; (2) creates an environment "that the plaintiff subjectively perceives as hostile or abusive"; and (3) "creates such an environment because of the plaintiff's [protected class]."

*Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Gregory v. Daly*, 243 F.3d 687, 691–92 (2d Cir. 2001)); *see also Sotomayor v. City of N.Y.*, 862 F. Supp. 2d 226, 260 (E.D.N.Y. 2012).

"[A] work environment's hostility should be assessed based on the 'totality of the circumstances.'"  *Patane*, 508 F.3d at 113 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).  Factors that may be considered include:  "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance."  *Id.* (citation omitted).  Thus, "whether a particular work environment is objectively hostile is necessarily a fact-intensive inquiry," *id.* at 114, and, accordingly, the Second Circuit has

"repeatedly cautioned against setting the bar too high" in the context of a motion to dismiss such a claim. *Id.* at 113 (quoting *Terry*, 336 F.3d at 148).

Trachtenberg's allegations fail to clear even a low bar. Putting aside Trachtenberg's conclusory statements about her "unimaginable work environment," *see* Am. Compl. ¶¶ 29–33, Trachtenberg's allegations are that, for the last two years of her employment: she was subjected to excessive scrutiny; principal Rosen would "frequently stand in the area and stare at [Trachtenberg] in an effort to intimidate [her]"; she received negative performance evaluations and letters from Rosen that contained "scurrilous charges"; she was moved to a poorly ventilated, windowless office; and she was refused training opportunities.

Assuming all of these allegations to be true, and viewing them in totality, they fall well short of the sort of conduct that courts have found "sufficiently pervasive to alter the conditions of the victim's employment." *Kassner*, 496 F.3d at 240 (allegation that defendants "pressur[ed] plaintiffs to retire from employment" too vague to support hostile work environment claim); *see Alfano v. Costello*, 294 F.3d 365, 379–80 (2d Cir. 2002) (collecting cases where courts have and have not found sufficient evidence of a hostile work environment); *Mendez-Nouel v. Gucci Am., Inc.*, No. 10 Civ. 3388 (PAE), 2012 WL 5451189, at *9–11 (S.D.N.Y. Nov. 8, 2012) (same); *see also Raum v. Laidlaw, Ltd.*, 173 F.3d 845 (2d Cir. 1999) (summary order) (affirming dismissal of hostile work environment claim where supervisor "repeatedly subjected [plaintiff] to obscene gestures and comments which caused [him] embarrassment and humiliation"); *Ardigo v. J. Christopher Capital, LLC*, No. 12 Civ. 3627 (JMF), 2013 WL 1195117, at *4 (S.D.N.Y. Mar. 25, 2013) (dismissing claim based on offensive statements made on three occasions); *Chukwueze v. NYCERS*, 891 F. Supp. 2d 443 (S.D.N.Y. 2012) (granting motion to dismiss where plaintiff alleged three incidents over the course of a year where he was chastised and berated in front of

his coworkers); *Smith v. Reg'l Plan Ass'n, Inc.*, No. 10 Civ. 5857 (BSJ)(KNF), 2011 WL

4801522, at *6 (S.D.N.Y. Oct. 7, 2011) (granting motion to dismiss where disabled plaintiff

alleged six incidents of discriminatory treatment, such as being called "crippled" and a "lame

duck"); *Leung v. N.Y. Univ.*, No. 08 Civ. 5150 (GBD), 2010 WL 1372541, at *7 (S.D.N.Y. Mar.

29, 2010) (dismissing claim based on unfair scrutiny and ridicule based on alleged false sexual

harassment investigations).

      Perhaps the closest Trachtenberg comes to alleging a hostile work environment is her

claim that someone humiliated her by "publicly scolding her in front of her students and

coworkers."  Am. Compl. ¶ 20.  The Second Circuit has found that, in certain circumstances, a

single tirade may suffice to establish a hostile work environment claim.  *See Howley v. Town of

Stratford*, 217 F.3d 141, 154 (2d Cir. 2000) (female firefighter subjected to sexually explicit and

degrading barrage of insults in front of her subordinates by a firefighter who later resisted her

orders and spread rumors questioning her competence).  But this case is a far cry from *Howley*.

Not only does Trachtenberg fail to allege any specifics about the content of the public scolding

or its effect on her authority in the classroom, she does not even specify who delivered it.  *See

Alfano*, 294 F.3d at 381 ("[Plaintiff] has not pointed to any conduct that endangered her or her

authority . . . .  She was simply embarrassed . . . by the boorish behavior of one or more

unidentified co-workers and by one fellow officer who made a dumb joke.").  And considering

this allegation alongside the others, the sum of the conduct alleged in the Amended Complaint

falls well short of conditions sufficiently pervasive to alter the conditions of the Trachtenberg's

employment.

      The BOE's motion to dismiss Trachtenberg's hostile work environment claim is,

therefore, granted.

## CONCLUSION

For the foregoing reasons, the BOE's motion to dismiss is granted in part and denied in part. The Clerk of Court is directed to terminate the motion pending at docket number 11.

An initial conference in this case is hereby scheduled for April 16, 2013, at 10:00 a.m. at the Thurgood Marshall United States Courthouse, 40 Centre Street, New York, New York 10007. Counsel are directed to prepare a Civil Case Management Plan and Scheduling Order in accordance with the Court's Individual Rules, to be submitted to the Court no later than three business days before the initial pretrial conference. To view the Court's Individual Rules, see the Court's website at http://www.nysd.uscourts.gov/judge/Engelmayer.

SO ORDERED.

Paul A. Engelmayer
United States District Judge

Dated: April 2, 2013
       New York, New York